On behalf of the state of Illinois v. Jim Oshana, on behalf of Feds Case 210-1144, on behalf of the Avalanche, Mr. Joseph Junitz, on behalf of the people, Mr. Scott Jacobson. All right, Mr. Junitz. Yes. Good afternoon. For those of you who argue with us, the timer's usually over there. I see it's over here, so you're going to be listening to it coming from over there. You may proceed. The floor is mine? Yes. I know that the panel wanted me to address the restitution argument first and foremost. But I would ask your indulgence just to bring one thing as a point of clarification, which I feel I may not have done justice to my client by failing to cite the correct terminology with one particular aspect of this case. And in my brief, with regards to the statement that is the crux of this case, on page 26 of my brief, I cite People's Exhibit, the People's Exhibit that contains the statement, State's Exhibit 3, that my client gave over the telephone. And I should have used the term at the bottom of the page that the way that the statement was – or the questions were asked of my client were asked in what is now a phrase that I've come to learn is the historic present. And if you look at the question that Pamela Hathaway asks my client, and she says, I'm going back to your employer, this statement's taken three weeks, three weeks after my client's injury. She asks him in the present tense, you work for Ploney and you work, so you are full-time correct. He says correct, however, he's not working at that time. She's asking this question in the historic present. She then goes on and says, all right, and you work the night shift, again, in the present tense, three weeks after his injury. Now, do you work for anyone else? Again, present tense. The reason this becomes relevant, I submit to you, is because an employer under the law is responsible to compensate an injured employee for a second job that he cannot perform at the same time that he's working for the employer that causes the injury. So your question is, your question or you're posing to us, was it an intentional misrepresentation or was it just a misunderstanding? I'm saying it wasn't false. Right. The statement was not false. Everything that this case revolves around is this statement. And by the time... I mean, we're talking about count two now when we're talking about the material statement. The statement's correct. That would be count two. We're talking about the statements themselves. And the trial court cited a couple different statements, as I recall. One was the statement to Hathaway, but then also statements to the two doctors, correct? This is what gets the ball rolling. This is what I think everybody hung their hat on that necessitated everything. In terms of the statements to the doctors, you have to look at them in context. The doctor had indicated that it was a dynamic situation, that at certain times it could have affected him in different ways. He was on pain medication. So if at one point he says, I can't crawl to the bathroom, and I asked the doctor, the treating doctor at that time, but he walks into your office, you know that he's not crawling to your office. I said, how do you explain that? And he says, it's dynamic. He says at different times he's going to feel different pain. But the bottom line is all of these things were available to the trier of fact. You asked those questions. The trier of fact heard. It's dynamic. All of these things were before the trier of fact, correct? No question. It doesn't mean that the trier of fact was correct. But he heard them, or he had the opportunity to hear them. I think he just simply dismissed them without necessarily giving them the proper deliberation. And that's why I think I'm in front of the panel at this moment in time. So basically your position is that the statements weren't deliberately false. They weren't fraudulent. He was just answering the questions the way they were asked of him. It's not fraudulent, and I think that's clear because there's no monies that ever change hands to my client. And there's no, I guess, detrimental reliance relative to the employer actually losing anything. By the time they made the payment to my client three or four months later for the first TTD, and by the way, I submit to you that that obligation to start paying the TTD was the day after the injury. They didn't pay him. They set the stage for this entire thing, and they attempted to capitalize upon it. Didn't pay him benefits and said, well, let's go follow this guy and see what happens. When we don't pay somebody. So three months later when they make the payment, they're fully aware that he could work somewhere else. Why? Because they had him under surveillance. They chose to make that payment. There was no detrimental reliance anywhere in this case. But had they not made the payment, there could have been sanctions imposed upon the employer as well, correct? That's for debate. That's completely debatable. They chose to cut the employee off at the knees, so to speak, and making that argument by issuing the check. They chose voluntarily to make that payment. Nothing forced them to do that. But to get back to the point of- You said no payments were made, but, I mean, there were two payments made. And weren't they made, are you saying that they're made on the date that they're made going forward and we don't relate back at all to the date of the injury? Because it's not clear as to when the payment's made. By the time the payment's made in February, he's off for 13 and a half weeks. They pay him for six. Which six weeks are they paying him for? We don't know. They never know. And if you look at Pamela Hathaway's testimony, she can't tell you. And I need to bring to your attention- Well, they start watching him, though, immediately. I'm sorry? They start watching him almost immediately. Within a couple of weeks. Well- Within two weeks. That's pretty fast. Within two weeks. And they find things that they're having problems with. We'll just say that at this point. And so it doesn't really make any difference. I mean, why is it important which six weeks are they paying him for when immediately within- I'll take your reference at this point, although I thought it was faster than that. Within two weeks, they started to survey or take surveillance of his actions. Why is that important? Because at the point in time when the statement's given, he's not collecting benefits. The phrase is continuously used throughout this trial, that he's collecting benefits during the period of time that he gives the statement. He doesn't get any payment until February, which is three months, obviously, after November. And he was owed for 13 1⁄2 weeks, but they only paid him for six. That's why it becomes relevant. If he was never paid, there would be no crime. I'm saying with regard to the fraudulent part, to the fraudulent part, there's no loss. They didn't lose anything. With regards to the false statement, it's a two- the statute obviously has two terms, false and fraudulent. He doesn't meet the fraudulent definition because by the time they make the payment, they know already he's been working part-time and could have said, we're not going to pay you a dime. But they still chose to pay him. And I submit to Your Honors that the fact that they don't get- that there's no request that's made for the restitution for any of the monies that are paid to my client meant that he was entitled to everything that he got. And I wanted to draw your attention to one thing on the restitution. Are you giving us this fraud term from the civil law or from the criminal law? I mean, that's- my question is, you're saying there was no fraud. There was not a fraudulent statement because we have no evidence that he got anything in return. There was no detrimental reliance on the statement. Correct. But does this criminal statute require that? If you look at the word fraudulent, yes, it does. For false, it does not. If it's a false statement, it doesn't say that you need anything. So I've been working in my mind for a long time. If he makes an innocent statement to someone that isn't necessarily involved in the claims processing, he can still be prosecuted under this statute. Because his intent is, I'm going to make a material misrepresentation or a false statement to someone, and my intent is to get some money out of it. You're basically being prosecuted for making a statement with intent. And I don't necessarily think that the statute can be interpreted that broadly, which was the unconstitutional argument. But I want to address the restitution argument, if I may, which the panel is most interested in. On page 105, and I apologize, but it's page 105 of the proceedings that were had on March 2, 2010. Pamela Hathaway was asked the following question. And she's asked, on the bottom of page 104, Gallagher Bassett is a third-party administrator, correct? Answer, correct. And that means that they're not an insurance company. They just handled a claim for someone else, correct? Answer, correct. And in this case, you've established that that is Arch Insurance, correct? Answer, for the claims that I handled, question, yes. Answer, yes. That's what we are talking about, question, that's what we are talking about, answer, yes. I submit to your honors that Gallagher Bassett, who's once removed from an insurance company, that insures an employer, is not a victim. They're not entitled to a penny. They are not a victim. The motion that I have served upon the state appellate prosecutor to cite additional authority with the court's permission, I'd like to present that motion, which does cite the applicable case law relative to insurer not being a victim under the law. And I also submit that the monies for surveillance, which were done at a point in time before they take the statement, are investigative costs. And I would submit that even if the employer had authorized it and the employer took the money out of his pocket, the employer still, who was a victim, would not be entitled to those monies because they're investigative costs. There's no case law in Illinois that says that investigative costs are recoverable. And these occurred even before the crime, or excuse me, the purported crime or the statement was given. And as such, that's not recoverable. With regards to the independent medical examination, I cited the testimony where the adjuster said, we would have ordered the independent medical examination anyway. But it took them a while to do that. May. It took them until May of the following year. Although we don't do a lot of work with comp here, and none of us have been on that particular panel, usually those independent exams come a lot earlier? No. It comes whenever the insurance company says that they're ready to have the guy examined so they can determine whether or not he needs to be released for work. The release for work comes in May of 2007, following the injury. That's when the physician releases my client. The physician hired by the insurance company releases my client. And I submit that the amounts of money with regards to the attorney's fees they had to spend in monitoring the case, again, don't even fall in the category of restitution. Mr. Young, can I ask you, we are dealing with really a new statute here, and something that there is no case law on with respect to the restitution. Under 25-5 of the act, it states that the defendant shall be ordered to pay, quote unquote, complete restitution, versus the restitution statute within the criminal code under the sentencing act, which is payment made from the victim in order to make the victim whole, or paid for all of the out-of-pocket costs of the victim, incurred as a result of the defendant's actions. So we're looking at a brand new act, which is one of the reasons why we've asked you to address it more closely. Aren't the costs that were incurred in investigating the case and getting the case ready to go to the prosecutors, aren't those costs, should those costs be considered, quote unquote, complete restitution? And if not, why not? Well, at the point in time that they chose to hire the surveillance, they didn't know where it would lead. So are you saying that they probably would have hired a surveillance whether or not there was going to be a criminal prosecution? No, I'm simply saying that every time, if I decide to put in a system that captures someone on a photo breaking into my house, that I can now recover the costs of that surveillance system or whatever it is because I knew that somebody may break into my house. I don't know if someone will, but the fact is I've set up the system, so now I get my money back. Well, that's what I just asked you. Are you saying that they used restitution or they used, excuse me, the surveillance separate and apart from thinking that there was going to be a criminal prosecution? They would have used the surveillance anyway. Well, I don't know if they would have or not, but I'm sure that they could have used it in the workers' comp case and said, well, look, this guy says he's totally disabled, he can't even do minimal part-time work, but under the law, he's still entitled to work minimal part-time work if it's light duty because under the law, if you look at the workers' comp cases, and I think I cited them quite adequately with regards to the fact that he's entitled to be paid benefits even if he is totally temporarily disabled from his main employment. The law is abundantly clear. Well, I don't think that's the issue. I think the issue is that did they ask him if he was doing light duty work, and did he say yes, did he say no, did he remain silent? They never asked him that question. No doctor ever asked him anything about that, correct? There is a doctor that asks him in April of 2007, are you working, and he says no. And I asked the doctor, did you ask him that as of April 2007, and he says yes. So he wasn't working at that time. The period of time in which he had been working was in October. And I submit, again, if I could just finish my last thought with regards to the attorney's fees, that that is not something that this statute was necessarily intended for. Again, does that not encompass complete restitution? If I decide to hire someone to monitor what goes on in a court proceeding after someone is charged, does it seem fair and reasonable that the person that I hire to sit in and look over the shoulder of what goes on in a criminal court, does that sound like restitution to you? Counsel, you will have an opportunity for rebuttal if you choose. Thank you so much. Thank you. Thank you. All right, Mr. Jacobs. Good afternoon, Your Honors. May it please the Court. I believe Justice Burke encapsulated the relevant criminal portion of the statute perfectly when he asked the question about whether or not the Defendant's Act of Workers' Comp Fraud would have been completed regardless of whether or not the corporation made the payment. This case has nothing to do with whether or not payments were made or whether or not TTD benefits would have been ordered in a collateral workers' comp proceeding. This case strictly construed under the act in which the legislature passed, Defendant's Criminal Act was complete once the workers' comp claim was filed, and it was demonstrably false. That's all that the act requires. Nothing further needed to be proven in this case. And why, again, is it demonstrably false? It was demonstrably false not as the Defendant seems to point to his statement on the phone and perhaps being ambiguous with the representative from the third-party administrators being the crux of this case. The crux of this case was the entire body of evidence, the video surveillance, the statements to the doctors, the statements to the third-party administrators, the fact that the Defendant said that he was incapable of full-time employment while he was working, for the most part, somewhere else. Well, didn't the – I mean, if you're taking all of the evidence and that's what's proving it, didn't the doctor say in response to somebody's questioning, well, you know, maybe the medicine wasn't working, you know, at the time he had to crawl to the bathroom, but by the time he got to my office, it was working. So I believe that he had 9 out of 10 on a pain scale. Respectfully, Justice Hutchinson, before you had asked whether or not all this information was before the trial court, and the trial court, looking at all of the evidence, not needing necessarily to be satisfied with respect to each link in the chain of circumstantial evidence, determined that from all of the evidence, he could infer Defendant's intent to have committed workers' comp fraud. I would submit respectfully that that decision is beyond this Court's review. The trial court was able to look at all of the evidence and determined that Defendant intentionally filed this workers' comp claim, made the statements that he made in order to receive workers' compensation benefits dishonestly. I don't think there was anything ambiguous about the nature of the fraud in this case. Do you agree that the statements to Hathaway can be viewed a couple of different ways? Perhaps. I've listened to, I mean, the transcript does seem to say, I think at a lot of points it says inaudible where, I mean, I found it to be clearly audible. I had to listen to it in my car stereo because it is a tape, and it's impossible apparently to find a tape deck player anywhere nowadays. But I found it to be relatively clear on a lot of points. I don't think it was as difficult to discern as the Defendant makes it out in his opening brief and reply brief. But, you know, that tape, whether it's a video tape or an audio tape, is a piece of evidence for the trier of fact to review. The trier of fact will listen to the evidence in this case. He inferred Defendant's intent. I would submit that that, frankly, has already been decided in this case. With respect to, I mean, the only thing that I can say about the reasonable doubt argument in this case is where Defendant attempts to point to the ambiguity in the statements, where Defendant attempts to point to the video tape, and whether or not he was able to move around as much as he claimed, or whether or not he was on painkillers that masked his symptoms, I mean, Shakespeare said it best, you know, he doth protest too much. The evidence is very clear in this case. Why did they, I think it was Hathaway who testified that by the time the payment was made, she knew that the Defendant had been working somewhere out of employment. She knew that they were going to, you know, file charges against him, but yet they decided to compensate him for the injury. Why would they do that? Why they would do that, I believe they were compelled to under the Workers' Compensation Act. I mean, once the petitioner files under the Workers' Compensation Act, he's pretty much entitled to receive payments, prompt payments, right away. I know the Fourth District in the Workers' Compensation case, and Otto recently decided, but on the interstate scaffolding line of cases, he's entitled to those payments. And should they have been made more promptly? I don't know. I mean, that's an argument that I know the Defendant raises repeatedly, and I agree for the first time. I mean, respectfully, it's completely collateral to this case. So, I mean, should they have made the payments? Should they not have made the payments? I don't really think it matters. I think the crime was complete once the claim was filed and it was proven to be false. Well, I think it makes a difference. Maybe it doesn't make a difference so much with the crime. What makes a difference to me is the restitution. Let's talk about the restitution. Let's talk about, as your opponent discussed, the surveillance fee. Sure. Why should he be ordered to pay the surveillance fee when they, almost as a matter of course, called Infomax or whomever it is to start conducting surveillance almost immediately? Well, as you, Your Honor. How are those related costs? As you, Your Honor, yourself pointed out, the restitution in this case is not controlled. As it normally is. I can point that out. I'm playing devil's advocate counsel. Okay. And I appreciate that. I believe I answered that on pages 34, 35, and 36 of my brief, is that we are not proceeding under the Uniform Code of Corrections in restitution in this case. Complete means complete. If the legislature had intended for restitution to be under the Uniform Code of Corrections, they would have specified as much. But here, I believe the legislature used a completely different restitution statute than the one that we're all familiar with because we're dealing with a completely different type of victim in a case like this. In not having any case law, and probably most certainly this will be case law, complete, shouldn't that mean reasonable? I mean, should we throw reasonableness out the window just because the legislature says it can be complete? I think we should never throw reasonableness out the window. I don't think that's what's called for here, though. How about the attorney's fees? The attorney monitoring the case. Isn't that the prosecutor's job? Well, with respect, I don't believe I fully answered your question regarding the surveillance fees. So with respect to the surveillance fees, I believe that's a cost that the victim in this case would have had to bear regardless of whether or not the defendant's claim turned out to be true or false. But the fact that it was false and that it was false, I mean, the nature of the crime itself was the filing of the claim. So who's the victim here? The victim here initially? Well, I mean... No, who's being made complete? Who's being made complete? I would say, polity construction is undoubtedly the victim here. They are the employer. So they're going to be billed by Gallagher, what is it, Gallagher-Bassett? Gallagher-Bassett's the third party administrator. For costs that they... I have no idea. Well, then we have to know why these costs are relevant. Well, I know why the costs... I mean, I'll put it this way. The record doesn't reflect what the relationship is necessarily... I mean, all the finite details between Gallagher-Bassett and Polity as an employer. I know Polity is the employer, I know Gallagher-Bassett's the third party administrator. I know what those terms mean only because I went to law school. Otherwise, I probably would not. But with respect to what the exact nature of those terms mean, I don't know between these two companies. And I know that Arch is the insurance company here in this case. Now, who pays who and for what? I don't know. I know that as a third party administrator, Gallagher-Bassett is neither the insurer nor the insurance company. But I do know that they're expected to do the heavy lifting with respect to defendants' workers' comp claim. So... What does this criminal sentencing order say as to who gets the restitution? The criminal sentencing order, I believe, specifies Gallagher-Bassett. And if I recall correctly in the record, Judge Sheldon ordered... I don't believe he stated Gallagher-Bassett on the record. I believe he just said restitution ordered to the victim. So, I mean, as far as for clarification as to who is the victim specifically, if you're asking me to be precise, I would say everybody here is the victim. I would say that Polity is the victim. I would say Gallagher-Bassett's the victim. I would say that Arch, in some sense, is the victim. But, I mean, to be very, very clear, Polity undoubtedly is the victim. If they assign their rights and responsibilities, in this case, over to Gallagher-Bassett, their responsibility to investigate the workers' comp claim, then the right to receive the payment as a result of the investigation of the workers' comp claim, that goes to Gallagher-Bassett. And who sorts that out later on between Polity and Gallagher-Bassett? Whether there's an action for unjust enrichment or whether, you know, Gallagher-Bassett and Polity have to sort that out later on? That's between Gallagher-Bassett and Polity. If anything, that would make the restitution order, in this case, voidable. I mean, this court's order directed me to address the void or the supposed voidness in the order. I mean, we're talking about a potential error in the order. That's something to have been litigated below. That's something for the parties below to have asked for. That doesn't make the order void. It makes it voidable. Were the attorneys, did they receive some of the fees, I'm sorry, the attorneys' fees as part of the restitution? Was that partially based on the attorneys monitoring the criminal case? I actually did not, I was not able to find a clear basis in the record for how the attorneys' fees were derived in the order. Now, as far as I can recall from the restitution hearing, I believe the assistant state's attorney said, here's what we have in terms of a bill that we received from Gallagher-Bassett. There was some argument and some discussion about it, none of it very substantive, none of it explaining where, what came from where, and who was asking for what specifically. And that became the restitution order in this case, and it was all done very summarily. Now, I don't think, if this court is asking me what I think an ideal restitution order in this case should have been, I think by its very nature, it should have included at least the disability payments. I think that's what the legislature clearly intended. But why didn't they ask for the disability payments? I think that's a fantastic question. I wish I had an answer for you. But they didn't. And the bottom line is, if we could do it all over again, would we have done it differently or would somebody else have done it differently? Maybe. Do you think perhaps they felt that they would have had to pay the disability payments anyway, even regardless of the alleged fraud? Perhaps. But I think that doesn't, I mean, at this point, frankly, with the procedural posture of the case, I wish that things were different. I wish that the state could ask for more. I wish that we could sort out what came from where, that perhaps the issue had been better litigated below, or that perhaps the defendant had objected more vehemently, or presented the trial court with a motion to reconsider the restitution order and an opportunity to reconsider its judgment post-sentencing. But the fact of the matter remains is that the defendant didn't do that. And so this court is now being asked to review a decision that the trial court didn't even have an opportunity to review itself, and then to come up and say that that alone is error, error which allows this court, I guess, to bypass the normal procedural rules and say that Judge Sheldon made an erroneous ruling in this case. I mean, the issue is whether that void under the statute, whether it's under the restitution statute or the specific restitution statute, or both of them combined, or how do we read them together? Well, when we're talking about complete restitution to any entity defrauded, doesn't there still have to be some direct, the restitution be the direct result of the defendant's criminal actions? And how is surveillance that's undertaken before we even know if there's criminal actions? You know, if they had an idea, if there was some information that they had that this guy's out there working, and then they went out and then they did some surveillance, maybe that's one thing. But here we have it, it's just undertaken, and then they find this allegedly directed. Well, with respect, Justice Burke, I don't think that it, that the restitution statute in this case used the phrase direct result. And I don't think that that's what the restitution case, the restitution statute in this case contemplates. I think it actually contemplates something a little. Wouldn't it, again, we're going back to reasonableness. Right. It would have to be reasonable in determining just because you have a work comp fraud, it Well, I think, I think there's, there's. That aren't relevant. Well, here, here we are, I guess, in the gray area between reasonableness and direct result. Right. Anything that is a direct result of the defendant's conduct, I think would look more like the more narrow restitution statute under the Uniform Criminal Code. But reasonableness, I think, might be a nice standard to import under the worker's comp statute. Now, anything reasonably related to this would be anything that the, any cost that the victim has to bear in order to bring this case, you know, from the worker's comp commission to the state's attorney's office for prosecution. I mean, again, we are not dealing with a normal victim in this case. A normal victim in a case would call the police and the police would handle the investigation. And then the police would submit their expenses for investigation for restitution. And this court from Guy Tanning Danaber would say, no, you don't get that in restitution. Absolutely not. Correct. But the difference is here is that a worker's, an employer, a third party administrator, an insured, or I'm sorry, an insured company. Under this statute, why are you precluding the police from getting restitution? This is a broader statute. I'm not. This is any entity that's defrauded by a worker's compensation claim. Yes. I mean, under this restitution statute, I don't think that Guy Tanning Danaber would have any force. But, but I don't think that's the question called for here. Whether or not. It's a hypothetical as to how far we go with this restitution and what costs are actually covered by this. And we talk about paper clips to clip the thing together to send it to the, to the, to the police. I mean, where does it end? If they ask for the 7,000 plus 3,000 and that was given to them, that's one thing. But they didn't ask for that. They asked for all these other things that seem somewhat miscellaneous. I mean, I think the statute is pretty clear on this point that it is designed to cover shall be ordered to pay complete restitution. Any person or entity still defrauded. I mean, if it's, if it relates back to the defendant's active fraud. I do believe that there is a reasonableness requirement. I think we've all, we've all come to terms with that. But the question here is, you know, I don't think that there's anything unreasonable of what's been asked of the defendant in this case. And to the extent that even the defendant believes that he failed to challenge it below. So even if this court were inclined to say that there were some unreasonable costs in this case that were imposed or that, you know, maybe the trial court in some sense, you know, this, this cost here might've been a bit excessive, you know, $35,000 to litigate a $7,000 workers comp case that might conversationally be unreasonable. We might not like it in closed quarters. But the fact of the matter is, is that that doesn't make the restitution or the void. It makes it avoidable. And the defendant, if you thought otherwise would have challenged to pull up. No, just, just briefly. Maybe we did this backwards, but we had you talk about the restitution. I asked you about the restitution and you brought this up. Do you believe that the defendant has waived even arguing with respect to restitution? Absolutely. I would also know, I don't, I don't believe the court has asked us to address the constitutionality of the statute. I don't believe it finds the statute to be in any way ambiguous. If there are any further questions in court. No, I have nothing. Thank you. Mr. Unis, why don't you start off telling us why you did not waive the argument with respect to restitution? Well, because the order itself is void. And I think this court's decision in the Ann Day case makes it clear that a restitution order can be attacked at any time and is not subject to procedural default. And the restitution order that exceeds the trial court's authority can be deemed void. I don't believe that the legislators in this particular case envisioned a case like this. Well, I mean, this whole statute seems to be a public policy basis. We don't want the workman's compensation system to be manipulated. Absolutely. We don't want it to be drained. We want it to pay for actual injuries and, you know, for people who really can't work. Absolutely. So, if somebody is asking for money because they can't work, but yet we find them working, isn't that a problem? The law says that an individual that cannot perform his normal duties, as let's say a truck driver in this case, but he can perform light duty, he's entitled to collect benefits. He's entitled to those benefits because the law says that if he can do some other kind of work, at best, the employer gets a credit. At best. So if his normal job pays $25 an hour and he gets a job that pays him $10, they've got to pay him the $15. But he didn't tell them he was working a light duty job. They didn't ask the question properly. He doesn't have an obligation to divulge those things until it comes up for hearing. And Mr. Jacobson made the argument that at the time he files this particular claim with the Industrial Commission, there's the fraud. Everyone says he had a compensable injury. Where's the fraud? On the day he files it, within a short period of time after his injury, there's no fraud. He has a legitimate injury. And at best, the fact that they decide to have this surveillance and add some pizzazz to it and say, okay, well, this guy obviously is lying, they could have posed the questions in a way where we wouldn't have to argue or have Mr. Jacobson concede, well, yeah, it could be interpreted more than one way, perhaps. But I submit, I submit they could have nailed this guy if, in fact, this is where they were headed. They wanted to create an ambiguity as such, or at least they did a poor job. I really can't say which is the case. But the way they phrased the question, I do not believe, entitles the third-party claims administrator to say, okay, fraud, false statement. Even though that conversation took place three weeks after the injury, he was still an employee of Clody, wasn't he? He had not been discharged, correct. So that part of the question isn't ambiguous. No, but the context of whether it's the historic present. Do you work, or, I'm sorry, let me go back to it if I can. I'm asking the panel to scrutinize this particular statement. I'm going back to your employer. You work for Clody, and you work. Present tense. So you're full-time, correct? Well, he is, but for his injury. But he's not full-time. He's not working full-time. Well, that's what he was working. Exactly. Historic. Historic. And he wants to be paid for full-time. And you work the night shift. Again, present tense. Well, she knew he wasn't working for three weeks, and he knew he wasn't working for three weeks. So where's the ambiguity? What's his education? According to the record, he had high school from a different country. And the sentencing, it turns out, to be Syria. But if I can answer Justice Hutchinson's question, I didn't say that it was an ambiguity. I simply said it's not false. If you look at this question in the context of his employment on the date of his injury, he was not working for someone else. The reason that became relevant, and this is crucial to the case, is because if he had a second job, the employer has an obligation to pay him for that second job. Now, the fact that, again, that they did the surveillance and they followed him doesn't obviate their responsibilities to start paying him the day after. And it doesn't obviate his legal right to work somewhere else. He had that right. Then all they get is a credit and a set-off. We never got to hearing. We never got to raise those issues. And they wanted to use this to prosecute my client. And I submit to you the legislature's never intended, I submit to you in my mind, never intended for it to be taken to this level. What they were looking to do was to prevent people from presenting fraudulent claims. Everyone, I will think, cannot argue to you after they paid my client, never asked for those monies back, testified that he had a compensable injury. That, in essence, they wanted to prosecute someone with respect to fraud on a compensable injury. How can you have fraud on a compensable injury? I don't see how you could. So it's not incumbent upon your client when he files his January 5, 2007 petition where it says, quote, disabled from work. It's not incumbent upon your client to say disabled from work except I can't work alone. I'm part-time. The cases that I cited with regards to the workers' comp and in terms of the numerous case law, even a Supreme Court case that says that an individual who works part-time work, temporary work, temporary work, for a period of time. If you work continuously, if you work continuously from the date of the injury up until the point in time when the case is resolved, it's not temporary. But it says specifically if it's temporary work, he's entitled to work it, and there's nothing that prevents him from doing that. I understand that, partner. My question is on the petition, there's nothing – it's not incumbent upon him to put in his petition that I'm disabled from full-time work but I can work light duty. You're not required to list all that on the actual form. So you don't have to notify the person you're seeking the money from because if they just process this petition not even talking to him then, they would just send him all of his money and then he would just send back the part that he had made from the part-time employment. No, assuming they pay them everything. But we can't assume that because they never did in this case. They didn't pay him everything. They didn't pay him what he was entitled to the day after the injury. The issue is intent to defraud. The issue is whether he had that intent, not whether he actually got a bunch of money. The issue is when he files this document, did he file it with the intent to defraud? Did he make false statements with the intent to defraud? In January? Yeah, January. He was entitled to be paid for those 13 weeks minus whatever it was. That's what a 19B hearing is all about. You present your evidence and you basically say this is what I'm entitled to. He never reached that stage and that particular application doesn't afford an opportunity to go into much detail as to what's going on with regards to the claim and how you make the calculations. He could not work his regular job during the period of time that's listed on that form. He was totally disabled from that job. And the law makes a distinction. Totally disabled means from the work in which you were working at the time of the injury. And I beg the justices to take a look at the cases with regards to the worker's comp that I've cited that specify what temporary total disability means. It means from the employment in which he suffers the injury. And if you look at those cases, you can only formulate an opinion in this particular case that at the point in time when you fill out that application, he was in fact temporarily totally disabled from his regular duty or regular responsibilities as a truck driver. And it's abundantly clear they did not have light duty work for him at Plotie. Otherwise, he could have worked there. But had he revealed to them that he was doing light duty, his benefits would have been reduced, correct? At a point in time when there's ultimately a hearing, yes. That's when it becomes relevant, when you get into a hearing and the actual testimony takes place. And there's a question that was asked of Pamela Hathaway with regards to whether or not they would be entitled to a set-off at the end of the case in terms of any payments that he had made for temporary work. And she said, yes, we're entitled to a credit and we're entitled to a set-off. But I just want to address one last thing with regards to the fact that- Your time has expired, but you can address this last item. The injury itself was one that was compensable. And- I'm sorry, say again. I can't hear you. I said the injury itself that my client suffered was a compensable injury. Everybody says that it was. And Mr. Jacobson used the term fraud. Fraud requires detrimental reliance. At the point in time when they made the payments, they didn't detrimentally rely on anything he said. Because, again, if it's ambiguous or as you take my opinion that it's not false, they make a payment knowing all the facts. Thank you very much for your time. Thank you. Thanks so much for your argument. This case will be taken under advisement. We will issue a written opinion in due course. And we now stand adjourned.